# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80398-CIV-RYSKAMP/VITUNAC

PETER MILANESE, as Personal
Representative (appointed or to be
appointed) of the ESTATE OF
CHRISTOPHER MILANESE,

      Plaintiff,

v.

THE CITY OF BOCA RATON,
FLORIDA,

      Defendant.

_____/

## ORDER GRANTING MOTION TO DISMISS

THIS CAUSE comes before the Court pursuant to Defendants' Motion to Dismiss, filed

April 21, 2008 **[DE 3]**.  Plaintiff responded on May 5, 2008 **[DE 6]**.  Defendants replied on May

27, 2008 **[DE 13]**.  This motion is ripe for adjudication.

## I.      BACKGROUND

Christopher Milanese ("Decedent") attended a Florida Marlins baseball game on the

evening of September 21, 2007.  He was accompanied by friends and his 19 year old female

cousin.  Decedent drank a large quantity of beer during the baseball game.  Once the game ended,

Decedent and his party proceeded to "The Wishing Well," a bar located at 111 Mizner Blvd.,

Boca Raton, Florida, where Decedent continued to drink alcohol.  At approximately 1:30 a.m., bartenders stopped serving alcohol to Decedent because he was visibly intoxicated.

After leaving The Wishing Well, Decedent wandered around the surrounding area, acting belligerently and provoking confrontation.  Decedent's cousin attempted to stop him from driving, but he rebuffed her efforts and got behind the wheel of his vehicle.  He then began driving erratically through the streets, hitting curbs and running red lights.  Decedent's cousin followed his car and observed his dangerous driving.  She became so concerned for his safety and the safety of others that she called "911."  The call was received at 3:05 a.m..

Boca Raton police officer N.R. Campo ("Officer Campo") promptly stopped Decedent's vehicle.  Decedent's cousin approached the police vehicle and explained that she was Decedent's cousin.  Officer Campo ordered her to get in her car and leave.  She followed his instructions.

When Officer Campo stopped Decedent, Decedent's faculties were impaired, and his blood-alcohol level of .24 mg of alcohol per 100 mL of blood was approximately three times the legal limit.  Decedent was placed in the rear seat of Officer Campo's police vehicle at 3:14 a.m. and driven to the Boca Raton Police Department at 100 Northwest Boca Raton Boulevard, Boca Raton, Florida.  Officer Campo arranged for Decedent's truck to be towed.  Officer T.W. Wooten ("Officer Wooten") was Officer Campo's supervising officer.

Decedent was booked for the offenses of driving with a suspended license without notice and several traffic infractions.  Decedent was issued five Uniform Traffic Citations for two violations of traffic control devices (failure to stop at a red light), failure to drive in a single lane, operation of a motor vehicle despite knowledge of having a suspended driver's license, and failure to exhibit current registration.  Decedent was fingerprinted and photographed.

At approximately 4:27 a.m., a police officer called the Yellow Cab Company to provide transportation to Decedent.  At approximately 4:29 a.m., the cab arrived at the front entrance of the police department.  Officer Campo reportedly escorted Decedent to the front door at about 4:30 a.m.  The cab driver claims he saw no one leave the building from 4:27 to 4:33 a.m.  Not seeing his passenger, the cab driver left.

At approximately 5:20 a.m., a train conductor spotted a white male, later identified as Decedent, lying parallel to the train tracks immediately west of Dixie Highway in Boca Raton. The train consisted of approximately 131 box cars and was traveling at approximately 40 to 50 mph.  The conductor blew his horn several times, but Decedent did not move.  The train struck Decedent in the head, dislodging his brain from his skull and killing him instantly.

The Plaintiff, Peter Milanese, the Personal Representative of the Estate of Decedent, brings a two-count Complaint against The City of Boca Raton, Officer Campo and Officer Wooten.  The Complaint asserts wrongful death and violation of Decedent's Civil Rights under 42 U.S.C. § 1983.  Defendants move for dismissal of both counts pursuant to Fed.R.Civ.P. 12(b)(6).

## II.   LEGAL STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests."  When examining a motion to dismiss, this Court considers whether the plaintiff has alleged facts sufficient to state a claim for relief.  When considering a motion to dismiss, the court must accept the well pleaded facts in the complaint as true and construe them

4

in the light most favorable to the plaintiff.  <u>Beck v. Deloitte & Touche</u>, 144 F.3d 732, 735 (11th

Cir. 1998).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations" <u>Bell Atlantic Corp.v. Twombly</u>, 127 S.Ct. 1955, 1964-65

(2007)(citing <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78, S.Ct. 99, 103 (1957)), a plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Bell

Atlantic</u>, 127 S.Ct. at 1964-65 (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 268, 106 S.Ct. 932,

(1986)).  "Factual allegations must be enough to raise a right to relief above the speculative

level... on the assumption that all the allegations in the complaint are true (even if doubtful in

fact)."  <u>Id</u>. (citations omitted).  A court should only grant a motion to dismiss for failure to state a

claim "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief.'" <u>Harper v. Blockbuster Entn't Corp.</u>,

139 F.3d 1385, 1387 (11th Cir. 1998) (quoting <u>Conley</u>, 355 U.S. at 45-46)).

## III.    <u>DISCUSSION</u>

**A.    Wrongful Death**

Plaintiffs maintain that Decedent's arrest and custodial detainment created a "special

relationship" between Decedent and Defendants such that Defendants were required to insure

Decedent's safe release.  Defendants request dismissal of the wrongful death claim on the

grounds that Decedent's release from custody extinguished any duty on their part to ensure his

safety.

"So long as [an individual] was placed in some sort of 'custody' or detention, he is owed a common law duty of care."  Kaiser v. Kolb, 543 So.2d 732, 734 (Fla. 1989).  When the custodial relationship terminates, so does the duty of care.  In Lindquist v. Woronka, 76 So.2d 358 (Fla. 4th DCA 1998), Plaintiff, who was "intoxicated, disoriented, confused, unaware of his surroundings, and otherwise incapacitated," was arrested near Blue Heron Boulevard and transported two miles to the police department, also located on Blue Heron Boulevard.  706 So.2d at 59-362.  Plaintiff was charged with disorderly conduct and released.  Id. at 359. Plaintiff attempted to cross a nearby highway on foot, but was struck by a vehicle and sustained permanent injury.  Id. at 359.  Plaintiff filed a 42 U.S.C. § 1983 action, claiming that he and the officers had a special relationship with the result that the officers should have protected him from his injuries.  Id.  Plaintiff also claimed that the officers placed him in a more dangerous position than he would have been otherwise because they released him in an area he felt was more dangerous than the area of his arrest.  Id.  The court upheld the dismissal of Plaintiff's complaint because Plaintiff was not in custody at the time of the accident.  Id. at 361.  The court also upheld the dismissal on the grounds that the police officers did not place Plaintiff in a more dangerous position than he would have been otherwise: both the place of Plaintiff's arrest and the place of Plaintiff's release were near Blue Heron Boulevard.  Id. at 362.

Although Lindquist arises in the context of 42 U.S.C. § 1983, Lindquist is still instructive because it stands for the proposition that the release of an arrestee terminates the custodial "special relationship" and the attendant duty of care.  The Court acknowledges Knapp v. Gurish, 541 N.E.2d 121, 122 (Ohio Ct. App. 1989), in which police officers picked up an intoxicated man "stumbling down the street" and drove him to the home of a friend, where they "waited until

light came on and decedent entered the enclosed porch area before leaving to continue their patrol." Id.  There, "any relationship between decedent and the police was terminated once decedent safely entered his friend's house." Id. at 123.  While this case tends to support Plaintiff's argument that Defendants had a duty to ensure Decedent's safe release, the Court cannot follow Knapp in light of Lindquist, which is factually indistinguishable and occurred in this jurisdiction.  Plaintiff is therefore unable to state a claim for wrongful death based solely on the special relationship theory.

The negligece claim is also fails to allege that the individual officers acted with the requisite level of intent.  Fl. Stat.§ 768.28 (9)(a) provides that "[n]o officer, employee or agent of the state can be held personally liable in tort unless that individual was acting in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  Allegations of bad faith, malicious purpose, or wanton and willful disregard of human rights, safety, or property must be sufficiently pled.  Fernander v. Bonis, 947 So.2d 584, 588 (Fla. 4th DCA 2007).  The negligence count makes no allegation that either officer acted with the requisite intent.

**B.     42 U.S.C. § 1983**

Plaintiff's 42 U.S.C. § 1983 claim alleges that Defendants violated Decedent's Fourth and Fourteenth Amendments rights in that they exhibited a deliberate and/or callous indifference to his interest in his personal security.  Plaintiff argues that, the officers' actions "created an opportunity for harm that would otherwise not have existed." (Complaint, 30).

Florida cases involving the state created danger theory are distinguishable from the

7

instant case.  Henderson v. Bowden, 737 So.2d 532, 533-37 (Fla. 1999) allowed a jury to decide whether police officers acted negligently during a roadside detention in which they allowed an intoxicated, non-custodial individual to drive a car containing two other passengers, both of whom perished in an accident occurring  immediately after the detention.  In LeMay v. Kondrk, 923 So.2d 1188, 1198-90 (Fla. 5th DCA 2006), a deputy instructed an intoxicated, non-custodial individual to walk along an unlit highway.  The individual, who was wearing dark clothes, was hit and killed by a car approximately 4 to 15 minutes later.  Id. at 1190.  Here, the Boca Raton police station was merely blocks away from Mizner Park, where Decedent was arrested.  Both locations were but a short distance from the railroad tracks.  As noted, Lindquist presented a virtually identical factual scenario that involved the release of an individual in essentially the same area as his arrest.  Based on Lindquist, the Court holds that Plaintiff has failed to state a claim under 42 U.S.C. § 1983.

Defendants attack the 42 U.S.C. § 1983 claim on several additional fronts.  The City of Boca Raton and Officer Wooten claim immunity from vicarious liability, and both officers claim entitlement to qualified immunity.  The Court declines to address these arguments at this time because it finds that Plaintiff has failed to state a claim against any Defendant pursuant to 42 U.S.C. § 1983.

## IV.   CONCLUSION

THE COURT, having considered the pertinent portions of the record and being otherwise fully advised, hereby

8

ORDERS AND ADJUDGES that the Motion to Dismiss, filed April 21, 2008 **[DE 3]**, is

GRANTED.  The dismissal is without prejudice, however, and Plaintiff may have 15 days from

the date of this Order to file an Amended Complaint.

DONE AND ORDERED at Chambers in West Palm Beach, Florida this 19th day of

August, 2008.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE